FILED

2009 Mar-23  PM 04:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DWANNA GREEN,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **vs.** | } | **CASE NO. CV 07-B-1081-S** |
| | } | |
| **COMPASS BANK,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OPINION</u>**

This case is before the court on defendant Compass Bank's Motion for Summary
Judgment.  (Doc. 13.)[1]  Upon consideration of the submissions of the parties and the
arguments of counsel, and for the reasons stated below, the court finds that the Motion is
due to be granted.

**I.     SUMMARY OF COMPLAINT**

Plaintiff Dwanna K. Green is an African-American resident of Birmingham,
Alabama.  (Doc. 1, ¶ 5; Doc. 15, Ex. 1, p. 10.)  Defendant employed plaintiff periodically
from July 10, 2000, until her resignation on September 30, 2005.  (Doc. 18, Ex. 1; Doc.
15, Ex. 1, p. 69.)  During that period of time, plaintiff alleges that defendant racially
discriminated and retaliated against her in violation of 42 U.S.C. § 1981 and Title VII of
the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*  (Doc. 1.)

---

[1]     Reference to a document number, ["Doc. ____"], refers to the number assigned
to each document as it is filed in the court's record.

II.      MOTION FOR SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and show that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. Credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are left to the jury, and, therefore, evidence favoring the non-moving party is to be believed and all justifiable inferences are to be drawn in her favor. *See id.* at 255. Nevertheless, the non-moving party "need not be given the benefit of every inference but only of every reasonable inference." *Evans v. Stephens*, 407 F.3d 1272, 1284 (11th Cir. 2005)(Carnes, J., concurring specially)(quoting

2

*Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1282 (11th Cir. 1999)).

### III.    STATEMENT OF FACTS[2]

Defendant originally employed plaintiff on July 10, 2000, as a part-time teller. (Doc. 15, Ex. 1, p. 13.)  In October of 2000, defendant promoted plaintiff to a full-time teller position.  (Doc. 15, Ex. 1, p. 14.)  Plaintiff was promoted again in May 2001 to the position of Financial Sales Representative ("FSR").  (Doc. 15, Ex. 1, pp. 15-16.)

In July 2004, plaintiff had complications with her pregnancy and took leave under the Family and Medical Leave Act ("FMLA").  (Doc. 15, Ex. 1, pp. 18-19).  She returned back to her FSR position on October 1, 2004, but she took additional FMLA leave on January 21, 2005, due to continuing pregnancy complications.  (Doc. 15, Ex. 1, pp. 20-21).  Plaintiff's baby was born on February 9, 2005.  (Doc. 15, Ex. 1, p. 21).  Plaintiff provided defendant with a doctor's note dated March 24, 2005, stating that she would be able to return to work on April 4, 2005.  (Doc. 15, Ex. 1, p. 22 and attached Ex. 1.)

Under defendant's FMLA policy, an eligible employee may take up to twelve weeks of leave per rolling twelve month period.  (Doc. 15, Ex. 2, ¶ 3, and attached Ex. A, pp. A1-A2.)   Plaintiff had exhausted her allotted twelve weeks of leave prior to her

---

[2]        As required when determining a Motion for Summary Judgment, the court has construed the facts in the light most favorable to the plaintiff Dwanna Green, the non-moving party.  All disputed facts are resolved in her favor, and all reasonable inferences arising from those facts are drawn in her favor.  *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990); *Zaben v. Air Products & Chemicals, Inc.*, 129 F.3d 1453, 1455 (11th Cir. 1997).

planned return on April 4, 2005.  (Doc. 15, Ex. 2, ¶ 4 and attached Ex. B, pp. B1-B3.)

In addition to FMLA leave, defendant has an Unpaid Leave of Absence Policy (the

"Policy") which applies to employees who are not entitled to job restoration because they

have exhausted or otherwise are not eligible for FMLA leave.  (Doc. 15, Ex. 2, 2nd ¶ 3;

Ex. 3, ¶ 3 and attached Ex. A.)  The Policy states in part:

> Compass will attempt to restore a person to his or her former position and pay, but no guarantees are made.  Employees returning from leaves of absence will be considered for any openings for which they are qualified at a salary commensurate with the job.  If there are no suitable openings, the employee may remain on inactive status for up to 30 days awaiting suitable openings. Turning down a job offer for which an employee is qualified constitutes a resignation.

(Doc. 15, Ex. 2, 2nd ¶ 3; Ex. 3 ¶ 3 and attached Ex. A.)

After plaintiff learned that she was released to return to work, she contacted Jan

Naccari, Human Resources Manager for defendant.  (Doc. 15, Ex. 1, p. 23.)  Plaintiff and

Naccari discussed the Policy, which was applicable to plaintiff due to the exhustion of

her FMLA leave.  (Doc. 15, Ex. 1, p. 26.)   Naccari informed plaintiff that although there

were no positions available as of that moment, defendant would work with her for 30

days to see if any positions became available.  (Doc. 15, Ex. 1, p. 26.)

After learning that she would not be immediately reinstated, plaintiff contacted an

attorney to assist with her return to work.  (Doc. 15, Ex. 1, pp. 27-28).  Plaintiff testified

at her deposition that her lawyer spoke with someone employed by defendant, but she

does not know with whom her attorney spoke or what may have been said.  (Doc. 15, Ex.

1, pp. 28-29, 94-95.)  Plaintiff subsequently received a call from Myra Roberts, a Senior

Staffing Specialist for defendant, concerning an interview for a position in the loan

center.  (Doc. 15, Ex. 1, pp. 28-29; Ex. 3, ¶ 2.)  Plaintiff interviewed for the position but

was overqualified and did not get the job.  (Doc. 1, Ex. 1, pp. 29-30.)

Roberts contacted plaintiff again to inform her that there were several open teller

positions for which she could apply.  (Doc. 15, Ex. 1, p. 30-31.)  Plaintiff expressed her

concern to Roberts that a teller position would require working on weekends, but Roberts

assured her that she would not be working every weekend.  (Doc. 15, Ex. 1, p. 31.)

Plaintiff accepted the teller position at the Eastwood Banking Center with the expectation

of bidding on and receiving an FSR position when a vacancy occurred.  (Doc. 15, Ex. 1,

p. 31.)  After receiving teller training in May 2005–during which time she was

paid–plaintiff began working as a teller in June 2005.  (Doc. 15, Ex. 1, p. 35.)  Her salary

remained the same as the salary for an FSR position, except she did not receive any

commissions and/or incentive pay for sales that FSRs are eligible to receive.  (Doc. 15,

Ex. 1, p. 32.)

## A.   CRESTLINE FSR POSITION

On June 22, 2005, an FSR position was posted as vacant at the Crestline Banking

Center.  (Doc. 15, Ex. 3, ¶ 7.)  Defendant follows a policy under which all non-exempt

job vacancies are posted on a Wednesday, both on the internet and in branches

themselves, and remain open until 5:00 p.m. the following Monday when the posting is

"closed." (Doc. 15, Ex. 1, pp. 38-39; Ex. 3, ¶ 6.)  When a posting is "closed," it means the hiring manager may make a selection without waiting for any additional bids, although candidates are still free to bid even after the Monday deadline passes.  (Doc. 15, Ex. 3, ¶ 6).  Following this policy, the job posting for the Crestline FSR position would have closed on June 27, 2005.

On July 11, 2005, plaintiff spoke with Donald Griffin ("Griffin"), the Banking Center Manager at Eastwood, about the available Crestline FSR position.  (Doc. 15, Ex. 1, p. 41.)  He informed her that, although the position was still showing as available, the Crestline Banking Center Manager, Grant Lauderdale, had already selected an applicant.  (Doc. 15, Ex. 1, pp. 41, 44-45.)  Plaintiff understood that branch managers make hiring decisions for their respective branches. (Doc. 15, Ex. 1, pp. 117-118; Doc. 18, Ex. 1.)

Despite the fact that the posting was already closed, and having been told the position was filled, plaintiff completed her bid for the Crestline FSR position on July 11, 2005.  (Doc. 15, Ex. 1 and attached Ex. 3; Ex. 3, ¶ 7, and attached Ex. B.)  Griffin signed plaintiff's bid for the FSR position on July 12, 2005.  (Doc. 15, Ex. 1 and attached Ex. 3.)  Plaintiff doubted that Griffin would have signed her bid had the position actually been filled.  (Doc. 15, Ex. 1, pp. 44-45.)  Human Resources received plaintiff's bid for the position on July 19, 2005, by which time it in fact had been filled by a white male named Kevin Carter.  (Doc. 15, Ex. 1, p. 114; Ex. 3, ¶ 8.)  Plaintiff explained the difference between the date she signed the bid and the date Human Resources received it by stating

6

that Griffin submitted the bid "when he wanted to."  (Doc. 15, Ex. 1, p. 121.)  There is no evidence Griffin delayed the delivery of the bid to Human Resources or that any delay in its submission resulted in plaintiff not getting the position.

Plaintiff sent an email to Myra Roberts on July 26, 2005, regarding the Crestline FSR position.  (Doc. 15, Ex. 3, attached Ex. C.)  Plaintiff referenced a conversation between the two concerning the position some three weeks prior.  (Doc. 15, Ex. 3, ¶ 9 and attached Ex. C.)  Roberts responded the next day, stating in part:

> Grant Lauderdale, BCM at Crestline, had already decided on a candidate when I spoke to him.  Therefore, I forgot to inform you.  There are other FSR openings currently that you can be considered for.  We have openings at UAB, Midfair and Valleydale (I know Valleydale would be too far for you).  If you are interested in those positions you would need to bid on them.  Thanks… Myra.

(Doc. 15, Ex. 3, ¶ 9 and attached Ex. C).

**B.    UAB FSR POSITION**

On August 16, 2005, plaintiff bid on an FSR position at the UAB Banking Center. (Doc. 15, Ex. 1, p. 48).  Jeff Allison, the UAB Banking Center Manager, interviewed plaintiff for the position, (doc. 15, ex. 1, p. 49), but selected another applicant, Blake Lary.  (Doc. 15, Ex. 1, p. 49.)  Lary is white.  (Doc. 15, Ex. 1, p. 54.)

Allison considered Lary to be the best candidate for the job because he had a Business Management/Administration degree, two years of credit management experience, and a state license to sell life and health insurance.  (Doc. 15, Ex. 4, ¶¶ 3-4.) Plaintiff contends that she had a casual conversation with Lary where he revealed he did

not actually have these credentials.  (Doc. 15, Ex. 1, pp. 52-53.)  Plaintiff believed that

she was more qualified for the position because she had previously done the job for four

to five years, she knew the company's procedures and policy, and she had banking

experience that Lary lacked.  (Doc. 15, Ex. 1, p. 53; Doc. 17, pp. 4-5.)

### C.   BROOKWOOD FSR POSITION

Another FSR position opened up at defendant's Brookwood Banking Center in

August 2005.  (Doc. 15, Ex. 3, ¶ 11.)  Plaintiff did not bid on the position because the

Brookwood Banking Center Manager, Loretta Cook, informed plaintiff that she already

knew whom the District Retail Executive wanted for the position.  (Doc. 15, Ex. 1, pp.

63-64; Ex. 3, ¶¶ 11-12.)  Cook, an African-American female, denies this discussion with

plaintiff took place and stated that she never discussed the filling of the Brookwood FSR

position with the District Retail Executive ("DRE").  (Doc. 15, Ex. 5, ¶ 5.)  However,

Grahem Meharg, the candidate chosen to fill the position, testified that Cook interviewed

him first and then referred him to Jim Harrison, the DRE, for an additional interview.

(Doc. 18, Ex. 2, pp. 15 & 19.)

### D.   SCHEDULING ISSUES

Plaintiff worked every other Saturday when she was an FSR.  (Doc. 15, Ex. 1, p.

74.)  However, when she returned to work as a teller, she and the other tellers were

scheduled through a rotation system to work almost every Saturday with some exceptions.

(Doc. 15, Ex. 1, pp. 34-35, 79-80, 88-89, 96-97.)  The work schedules for the tellers were

created by two employees other than the Banking Center Manager, Griffin.  (Doc. 15, Ex. 1, pp. 79 & 115.)

Plaintiff testified that picking up her child from daycare was at times a challenge because of her schedule and duties as a teller.  (Doc. 15, Ex. 1, pp. 86-87.)  Additionally, plaintiff had provided care for her children on Saturdays, but she had not planned to use it as often as became necessary.  (Doc. 15, Ex. 1, pp. 87-88.)  She alleged that a co-teller, a white female, was allowed to go pick up her four or five-year old daughter from daycare and bring her to work.  (Doc. 15, Ex. 1, pp. 112, 135-136.)  The child would play or sit in Griffin's office or the break room while the parent finished her work.  (Doc. 15, Ex. 1, pp. 135-136.)  Griffin would also leave the branch to pick up his child and take the child to his or her grandmother's house.  (Doc. 15, Ex. 1, pp. 117, 134-135.)  Plaintiff requested permission to pick up her seven-year-old and bring him back to work, but her request was always denied, even on days when the other teller or Griffin brought their children to work.  (Doc. 15, Ex. 1, pp. 86-87, 136-137.)

### E.    RESIGNATION

Plaintiff resigned her employment with defendant on September 30, 2005.  (Doc. 15, Ex. 1, p. 69.)  Her reason for resigning was as follows:

> I really started to feel like I was being shafted.  I was not treated fair.  And everything that I had been told prior to coming back was not true.  And I just felt like I was taken for granted.  And the standard in which Myra [Roberts] explained to me everything, nothing was true.  Nothing was actually true once I came back as a teller.

(Doc. 15, Ex. 1, pp. 71-72.)  Plaintiff believed that Roberts had misled her as to how many Saturdays she would work and her ability to bid into an FSR position.  (Doc. 15, Ex. 1, p. 72.)

Although plaintiff never complained of discrimination during her employment, (doc. 15, ex. 1, p. 98), she filed a charge of racial discrimination and retaliation with the Equal Employment Opportunity Commission on January 9, 2006.  (Doc. 1, p. 9.)  The EEOC responded with a Dismissal and Notice of Rights on March 12, 2007.  (Doc. 1, ¶ 3 and p. 7; Doc. 4, ¶ 3.)

## IV.   RACE DISCRIMINATION CLAIMS

In the first count of her Complaint, plaintiff alleges that defendant unlawfully discriminated against her in two different respects.  (Doc. 1, p. 4.)  First, plaintiff contends that defendant discouraged her from applying for promotions, failed to afford her an interview for the positions, and ultimately awarded the promotions to white male employees who were not better qualified than her.  (Doc. 1, ¶ 18.)  These allegations relate specifically to her applications for the three FSR positions previously discussed. (Doc. 15, Ex. 1, pp. 60-62.)  Second, plaintiff alleges that defendant treated similarly situated white employees more favorably.  (Doc. 1, ¶ 16.)

### A.   LEGAL STANDARD FOR DISCRIMINATION CLAIMS

"Title VII of the Civil Rights Act of 1964 provides that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" *Holifield v. Reno*, 115 F.3d 1555, 1561 (11th Cir. 1997)(quoting 42 U.S.C. § 2000e-2(a)(1)).  "[T]he plaintiff bears the ultimate burden of proving discriminatory treatment by a preponderance of the evidence" for any claim brought under Title VII. *Crawford v. Carroll*, 529 F.3d 961, 975 (11th Cir. 2008) (quotation omitted).  Absent direct evidence, a plaintiff may rely upon circumstantial evidence to prove discriminatory intent under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973). *Id.* at 975-76.  "Under this framework, if the plaintiff establishes a *prima facie* case, the burden shifts to the employer to 'articulate some legitimate, nondiscriminatory reason' for the adverse employment action." *Id.* at 976 (quoting *McDonnell Douglas*, 411 U.S. at 802).  The employer's burden is very light: "the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper v. Southern Co.*, 390 F.3d 695, 725 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson Foods, Inc.*, 546 U.S. 454 (2006).  If the employer is able to meet this burden, the plaintiff is afforded the opportunity to demonstrate that the employer's proffered reason for the adverse employment action is merely a pretext for discrimination. *Holifield*, 115 F.3d at 1565 (citing *McDonnell Douglas*, 411 U.S. at 804).  Pretext can be shown either by directly persuading a court that discriminatory motive more likely motivated the employer or by indirectly demonstrating the provided reason was unworthy

of credence.  *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 656 (11th Cir. 1983).  "A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer.  Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it . . . ."  *Chapman v. AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

### B.    PROMOTION CLAIMS

Plaintiff has alleged that defendant racially discriminated against her with respect to three promotions she sought: (1) the Crestline FSR position awarded to Kevin Carter; (2) the UAB FSR position awarded to Blake Lary; and (3) the Brookwood FSR position awarded to Grahem Meharg.  (Doc. 1, p. 4; Doc. 15, Ex. 1, pp. 60-62; Ex. 6, p. 5; Doc. 17, p. 13-16.)  Following the *McDonnell Douglas* rubric, "to establish a prima facie case of discriminatory failure to promote, a plaintiff must prove: (1) that [she] is a member of a protected class; (2) that [she] was qualified for and applied for the promotion; (3) that [she] was rejected; and (4) that other equally or less qualified employees who were not members of the protected class were promoted."  *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001)(quotations and alterations omitted).  After these elements have been established, the employer "has the burden of producing a legitimate, non-discriminatory reason for the challenged employment action."  *Id*.  If the employer can meet its burden of production, then the plaintiff "has the ultimate burden of proving the

12

reason to be a pretext for unlawful discrimination." *Id*.

The court will apply this framework separately to each of the three positions plaintiff sought.

### 1.    Crestline FSR Position

The Crestline FSR position was posted as vacant on June 22, 2005; per company policy, it "closed" on June 27, 2005.  (Doc. 15, Ex. 3, ¶¶ 6-7.)  Once closed, the Crestline Banking Center Manager was free to make a selection decision without waiting for additional bids.  (Doc. 15, Ex 3.)  Candidates for the position were free to continue submitting applications.  (Doc. 15, Ex. 3.)  Plaintiff did not complete her bid until July 11, 2005.  (Doc. 15, Ex. 3, ¶ 7.)  By the time plaintiff's bid was received by Human Resources on July 19, 2005, the successful candidate, Kevin Carter, already had been selected.  (Doc. 15, Ex. 3, ¶¶ 7-8.)

With respect to the Crestline FSR position, plaintiff has established the elements of a prima facie case of racially discriminatory failure to promote: (1) as an African-American, she is a member of a protected class; (2) she was qualified for the FSR position, having previously held it, and she applied for the Crestline FSR position, albeit late; (3) she was rejected; and (4) the person to whom the job was awarded was white. *See Denney*, 247 F.3d at 1183.

Because plaintiff can establish her prima facie case, the burden shifts to defendant to produce a legitimate, non-discriminatory reason as to why Carter was hired instead of

plaintiff. *See Crawford*, 529 F.3d at 975-76.  In this case, defendants have produced a legitimate, non-discriminatory reason why plaintiff was not given the Crestline FSR position: Carter had been selected for the position prior to the receipt of plaintiff's application.  (Doc. 14, p. 15; Doc. 19, p. 6-7.)

Because defendant has met its burden of production, plaintiff must demonstrate that defendant's proffered reason is a pretext for unlawful discrimination.  *Denney*, 247 F.3d at 1183.  Plaintiff asserts that the delay between her submission of the application to Griffin and its receipt by Human Resources is responsible for her not getting the position. (Doc. 17, p. 15.)  However, plaintiff has offered no evidence that Griffin–or any other employee of defendant–was responsible for the delay between the submission and receipt of her application.  Nor has she offered any evidence that the position was still available when she completed her application.

After June 27, 2005, the Crestline Banking Center Manager was free to make a selection decision without waiting for any additional bids.  (Doc. 15, Ex. 3.)  Griffin told plaintiff prior to her submitting her bid that the Crestline Banking Center Manager had made a decision regarding the position.  (Doc. 15, Ex. 1, pp. 41, 44-45.)  She applied anyway, and Carter was selected before plaintiff's application was received by Human Resources.  (Doc. 1, Ex. 1, p. 114 and attached Ex. 3; Ex. 3, ¶¶ 7 & 8.)  Her conclusory allegation that the delay was discriminatory, without more, is insufficient to raise an inference of pretext or intentional discrimination in this case.  *See Mayfield v. Patterson*

14

*Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)("Conclusory allegations of discrimination, without more, are not sufficient to raise an inference of pretext or intentional discrimination where an employee has offered extensive evidence of legitimate, non-discriminatory reasons for its actions." (quotation and alteration omitted)).

Plaintiff adds as evidence of discrimination that Roberts informed her that the position was available prior to the submission of her bid, only to inform her later in an email that the position had been filled.  (Doc. 17, p. 15.)  Plaintiff claims that these shifting or inconsistent statements are evidence of pretext with respect to the Crestline FSR position.  (Doc. 17, p. 15.)  *See Tidwell v. Carter Prods.*, 135 F.3d 1422, 1427 (11th Cir. 1998)("the identification of inconsistencies in an employer's testimony can be evidence of pretext . . .").  However, these are not the sort of inconsistencies that may lead to an inference of pretext.  If the Crestline Banking Center Manager, the decisionmaker with respect to positions at the branch, had alternatively given different rationales for not offering the position to plaintiff, that could be evidence of pretext.  *See id.*; *see also Springer v. Congergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1349 (11th Cir. 2007)("Plaintiff may demonstrate that [defendant's] reasons were pretextual by revealing such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in [defendant's] proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.")(quoation and alteration omitted).  But Roberts did not offer differing rationales as to why plaintiff did not get the

Crestline FSR position.  She may have initially told plaintiff the position was available and then later that it was not, as her July 27 email to plaintiff indicates: "Grant Lauderdale, [Banking Center Manager] at Crestline, had already decided on a candidate when I spoke to him."  (Doc. 15, Ex. 3 and attached Ex. C.)  But defendant's reason for why plaintiff did not get this position has never changed.  This email is not evidence of shifting explanations.  Instead, it confirms defendant's explanation that although the Crestline FSR position was listed as available, a candidate had in fact already been selected for the position before plaintiff applied.  Plaintiff has not demonstrated an inconsistency which renders defendant's legitimate, non-discriminatory reason unworthy of credence.  *See Springer*, 509 F.3d at 1349.

Based on the foregoing, defendant's Motion for Summary Judgment is due to be granted with respect to plaintiff's allegations related to defendant's failure to promote her to the Crestline FSR position.

### 2. UAB FSR Position

In August 2005, plaintiff bid on and was selected for an interview for an available FSR position at defendant's UAB Banking Center.  (Doc. 15, Ex. 1, p. 46-49.)  The UAB Banking Center Manager, Jeff Allison, selected Blake Lary for the position.  (Doc. 15, Ex. 4.)  Lary is a white male.  (Doc. 15, Ex. 1, p. 54.)  Plaintiff alleges that Lary's receipt of the promotion was racial discrimination, (doc. 1, ¶ 18; doc. 15, ex. 1, p. 61), and she can establish the four elements of her prima facie case with respect to this allegation.  *See*

*Denney*, 247 F.3d at 1183.  In response, defendant has offered a legitimate, non-discriminatory reason for Lary's selection: he was better qualified.  (Doc. 14, p. 16.)

A subjective reason to promote one individual instead of another is "a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion."  *Springer*, 509 F.3d at 1349.  Jeff Allison, the Banking Center Manager at defendant's UAB Branch, specifically cited the following qualifications of Lary: a Business Management / Administration degree from the University of Alabama; two years of credit management experience with Wells Fargo Financial; and a state license to sell life and health insurance.  (Doc. 15, Ex. 4.)

Plaintiff thus has the burden of demonstrating that defendant's articulated reason is a pretext for discrimination.[3]  *See Denney*, 247 F.3d at 1183.  In a case alleging racially discriminatory failure to promote, "a plaintiff cannot prove pretext by simply arguing or even by showing that [she] was better qualified than the person who received the position [she] coveted. . . . [A] plaintiff must show that the disparities between the successful applicant's and [her] own were of such weight and significance that no reasonable person . . . could have chosen the candidate selected . . . ."  *Springer*, 509 F.3d at 1350 (quotations & alterations omitted).  Plaintiff argues that she had "far superior experience"

---

[3]      At oral argument, plaintiff's counsel conceded that there was no evidence that defendant's articulated reason for the decision to hire Lary instead of her was a pretext for discrimination.

17

compared to Lary and that "[d]efendant cannot cite one instance where the bid process was clearly open and fair to [plaintiff.]"  (Doc. 17, pp. 5-6 & 16.)  Plaintiff has offered no evidence as to how the bid process was either closed or unfair to her, and the mere fact that the UAB Banking Center Manager based his hiring on subjective criteria is insufficient to show pretext in this case.  *See Springer*, 509 F.3d at 1349 ("Absent evidence that subjective hiring criteria were used as a mask for discrimination, the fact that an employer based a hiring or promotion decision on purely subjective criteria will rarely, if ever, prove pretext.").  The disparities between plaintiff's qualifications and Lary's are not so significant that no reasonable person could have selected Lary.

Although plaintiff argues that Lary did not actually have the credentials cited above, she has produced no evidence to that effect.  (Doc. 15, Ex. 1, pp. 51-53; Doc. 17, p. 6.)  As stated above, plaintiff's allegations that Lary lacked the qualifications the hiring decision was based upon are insufficient by themselves to raise an inference of pretext. *See Mayfield*, 101 F.3d at 1376.

Plaintiff has failed to show that defendant's offered reason was pretextual or unworthy of credence.  Accordingly, defendant's Motion for Summary Judgment is due to be granted with respect to plaintiff's allegations related to defendant's failure to promote her to the UAB FSR position.

### 3.    Brookwood FSR Position

In addition to the above two FSR positions, plaintiff claims that defendant racially

discriminated against her with respect to an FSR position that opened at defendant's Brookwood Banking Center in August 2005.  (Doc. 15, Ex. 1, pp. 60-62; Doc. 17, p. 13-15.)  Plaintiff admittedly did not apply for the Brookwood FSR position and thus cannot prove the second element of the prima facie case.  (Doc. 15, Ex. 1 pp. 63-64; Doc. 17, p. 14.)  *Denney*, 247 F.3d at 1183.  However, a non-applicant such as plaintiff "may be entitled to relief where the employer's clear policy of exclusion would make an application a useless exercise.  Such a claim requires two distinct determinations: that the nonapplicant would have applied but for discrimination and that [she] would have been discriminatorily rejected had [she] applied."  *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1560 (11th Cir. 1986).

Plaintiff has based her failure to apply for this particular position on three rationales.  First, plaintiff expressed an interest in job openings at the Brookwood Banking Center to Loretta Cook, the African-American Banking Center Manager of that branch.  (Doc. 15, Ex. 1, pp. 63-64; Ex. 3, ¶¶ 11-12; Doc. 17, p. 14-15.)  Cook in turn told plaintiff not to bother bidding on an open FSR position because the District Retail Executive already knew whom he wanted Cook to select.  (Doc. 15, Ex. 1, pp. 63-64; Ex. 3, ¶¶ 11-12; Doc. 17, p. 14-15.)  Construing the facts in the light most favorable to plaintiff, it appears that a white male applicant may have been preselected for the Brookwood FSR position prior to the end of the open bid process.  Even though such a preselection would have violated defendant's policy of waiting until the position was

19

"closed" before evaluating applicants, preselection alone does not necessarily indicate racial discrimination.  *Springer*, 509 F.3d at 1350.  Plaintiff has offered no evidence that Cook's statements were based on racial animus or an intent to deny African-Americans the opportunity to apply for the position.  *See id*.  In short, there is no evidence that plaintiff would have applied for this position but for discrimination, nor has plaintiff shown that she would have been discriminatorily rejected had she applied.  *See Cox*, 784 F.2d at 1560.  As such, plaintiff cannot rely upon Cook's statements as the basis for why she did not apply for the Brookwood FSR position.[4]

Second, plaintiff claims she did not apply for the Brookwood FSR position because Griffin told plaintiff that he was not going to sign anymore bid sheets.  (Doc. 17, pp. 4-5, 9, 13-15; Doc. 15, Ex. 1, p. 103.)  There is no evidence in the record when this statement was made, and Griffin did not keep plaintiff from applying for both the Crestline and UAB FSR positions.  In short, this allegation is insufficient to justify her failure to apply for the Brookwood FSR position.  There is no indication that submitting an application to Griffin for his signature would have been a futile gesture.

Third, plaintiff alleges she did not apply for the Brookwood FSR position because Roberts misinformed her as to her ability to apply for positions open outside her branch.  (Doc. 17, pp. 5, 9, 14-15.)  Assuming that Roberts did misinform plaintiff, any confusion

---

[4]     The court also notes that where, as here, a company has publicized an open position, expressing a general interest in being hired without submitting an application is insufficient to establish a prima facie case of discrimination.  *See Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1345 (11th Cir. 2003)(stating such in a case involving age discrimination).

was clarified by Roberts' July 27 email, sent before the Brookwood FSR position opened

in August.  (Doc. 15, Ex. 3, ¶ 11 and attached Ex. C.)  Furthermore, plaintiff stated

unequivocally in her deposition that she understood that she could apply for jobs at other

branches.  (Doc. 15, Ex. 1, p. 130.)  If plaintiff did not believe she could apply for jobs

outside her branch, than it is unlikely she would have called Cook to inquire about job

openings at Brookwood.  (Doc. 15, Ex. 1, p. 63-64.)  All of this evidence indicates that

plaintiff knew, at the time the Brookwood position became available, that she could apply

for positions outside her branch.  Her third rationale for not applying for the Brookwood

FSR position is not supported by the facts in the record.

Plaintiff has not shown that a clear policy of exclusion would have made an

application for the Brookwood FSR position a useless exercise.  *See Cox*, 784 F.2d at

1560.  Accordingly, she cannot establish a prima facie case of discriminatory failure to

promote with respect to that position.  *Denney*, 247 F.3d at 1183 (requiring plaintiff to

show she applied for position to establish prima facie case).  Defendant's Motion for

Summary Judgment is due to be granted with respect to the failure to promote plaintiff to

the Brookwood FSR position.

### B.    DISPARATE TREATMENT CLAIM

Plaintiff alleges that defendant disparately treated her in two respects.  (Doc. 1, ¶

16.)  First, she alleges that she was scheduled to work more Saturdays than other tellers,

in spite of an assurance from Roberts that she would not be required to work every

21

Saturday.  (Doc. 17, pp. 7, 8, 9, 12, & 18.)  Second, plaintiff alleges that Griffin and another white teller were allowed to bring their children to work while plaintiff was denied that privilege.  (Doc. 17, pp. 7, 8, & 17-19.)

To establish a prima facie case of racial discrimination based on disparate treatment, a plaintiff must show that: (1) she belongs to a protected class; (2) she was subjected to an adverse job action; (3) her employer treated similarly situated employees outside her classification more favorably; and (4) she was qualified to do the job.  *Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003).

The phrase "adverse employment action" is shorthand for Title VII's requirement that a plaintiff "show a change in the 'compensation, terms, conditions, or privileges of her employment' in order to prevail."  *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008)(quoting 42 U.S.C. § 2000e-2(a)(1))(alteration omitted).

There is no bright-line rule for what constitutes an adverse employment action.  *See Davis v. Town of Lake Park*, 245 F.3d 1232, 1238 (11th Cir. 2001).  "It is clear, however, that not all conduct by an employer negatively affecting an employee constitutes adverse employment action."  *Id*.  "[N]ot everything that makes an employee unhappy is an actionable adverse action."  *Bass v. Bd. of County Comm'rs*, 256 F.3d 1095, 1118 (11th Cir. 2001)(quoting *Smart v. Ball State University*, 89 F.3d 437, 441 (7th Cir. 1996)).

For an employee to prove that an adverse employment action was taken, she "must

22

show a serious and material change in the terms, conditions, or privileges of employment. Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239; *see also Doe v. DeKalb County School District*, 145 F.3d 1441, 1453 (11th Cir. 1998)(stating rule that a plaintiff must show "that a reasonable person in [her] position would have found [the decision] to be adverse under all the facts and circumstances").

The work schedule in the record shows that plaintiff was scheduled to be off one Saturday over the eight week period from August 20, 2005, to October 8, 2005, while other employees had two or three Saturdays off.  (Doc. 15, Ex. 1 and Ex. 6.)  Although some employees had one or two more Saturdays off than plaintiff, that disparity does not rise to the level of an adverse employment action.  *See O'Neal v. City of Chicago*, 392 F.3d 909, 913 (7th Cir. 2004)(finding that the loss of a flexible work schedule and the ability to have weekends and holidays off is not an adverse employment action).  Working Saturdays was within the reasonable scope of plaintiff's job as a teller.  *See id*. (requiring employee to perform duties within scope of his or her employment is not adverse action).  Thus, plaintiff cannot establish the element of her prima facie case of disparate treatment with respect to her Saturday work schedule.

Likewise, the denial of plaintiff's requests to bring her children to work does not amount to an adverse employment action for the purpose of her disparate treatment claim.

23

Although plaintiff believed it was unfair that her boss and a co-worker were able to bring their children to work, her subjective opinion alone is insufficient to make out a prima facie case of disparate treatment. *See Davis*, 245 F.3d at 1239. The denial of plaintiff's request was not a serious or material change in the terms, conditions, or privileges of her employment. *See id*.

Based on the foregoing, defendant's Motion for Summary Judgment is due to be granted with respect to plaintiff's allegations of disparate treatment.

## V.     RETALIATION CLAIM

Count two of plaintiff's Complaint alleges that defendant retaliated against her because she opposed defendant's unlawful employment practices. (Doc. 1, p. 4-5.) Plaintiff states that she complained to defendant that she had been discriminated against because she was pregnant and had taken leave under the Family Medical Leave Act. (Doc. 1, ¶ 22.) In her deposition, plaintiff attributed the retaliation to her hiring of a lawyer to assist with her return to work for defendant. (Doc. 15, Ex. 1, pp. 122-123.) Plaintiff alleges that defendant's retaliation manifested itself in two ways: first, she was assigned to work different hours and weekends, and second, she was denied interviews for promotions that were then awarded to white male employees who were no better qualified than she was. (Doc. 1, ¶¶ 23 & 25.)

"Title VII's anti-retaliation provision forbids actions by an employer that 'discriminate against' an employee because she has 'opposed' a practice that Title VII

forbids or has 'made a charge, testified, assisted, or participated in' a Title VII 'investigation, proceeding, or hearing.'"  *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006)(citing 42 U.S.C. § 2000e-3(a)).  To establish a prima facie case of retaliation under this provision, a plaintiff must show that (1) she engaged in an activity protected by Title VII; (2) she suffered an adverse employment action; and (3) there was some causal relation between the two events.  *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999).  "The challenged action must be materially adverse from the standpoint of a reasonable employee."  *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 978 n. 52 (11th Cir. 2008)(citing *Burlington N.*, 548 U.S. 53).   To show a causal connection between the adverse action and the employee's protected conduct, "the plaintiff must prove 'that the protected activity and the adverse action are not completely unrelated.'"  *Id*. (quoting *Wideman v. Wal-Mart Stores, Inc.*, 1414 F.3d 1453, 1454 (11th Cir. 1998)).  While the causal link requirement is interpreted broadly, *EEOC v. Reichhold Chem., Inc.*, 988 F.2d 1564, 1571 (11th Cir. 1993), "merely showing that the alleged adverse action occurred sometime after the protected expression does not establish the causation element–for temporal progression to be enough, the events must be in 'very close' proximity."  *Davis*, 516 F.3d at 978 n. 52.

As with claims of race discrimination, "Title VII retaliation claims require that once the plaintiff establishes a prima facie case, the employer must proffer a legitimate, non-discriminatory reason for the adverse employment action.  If the employer offers

such legitimate reasons for the employment action, the plaintiff must then demonstrate that the employer's proffered explanation is a pretext for retaliation." *Crawford*, 529 F.3d 961 at 976 (quotations omitted).

Plaintiff's retaliation claims in Count II of her Complaint are based on her contention that she "complained to the Defendant that she felt that she was discriminated against because she was pregnant and because she invoked the protections and provisions of the Family and Medical Leave Act." (Doc. 1, ¶ 22.)  However, it is undisputed that plaintiff herself never complained about discrimination.  (Doc. 15, Ex. 1, p. 98.)  Her claim appears to be based solely on her previous attorney's alleged conversation with some unknown person who worked for defendant.  (Doc. 15, Ex. 1, pp. 27-29, 94-95.) Plaintiff does not know what the content of these discussions were, (doc. 15, ex. 1, pp. 28-29, 94-95), so there is no evidence that any employee of defendant was ever told or otherwise made aware that plaintiff believed she had been discriminated against.

Based on the foregoing, plaintiff cannot establish either that she engaged in protected activity or that any protected activity was causally related to the retaliation she complains of.  A person has engaged in statutorily protected conduct when she has opposed unlawful discrimination, but a general complaint of unfair treatment will not suffice.  *See Barker v. CSX Distribution Servs.*, 68 F.3d 694, 702 (11th Cir. 1995).  In this case, plaintiff has not given any evidence that she, or anyone else, ever complained to any employee of defendant that she had been discriminated against.  Thus, there is no

26

evidence that plaintiff engaged in protected activity.

Even assuming that plaintiff could make a threshold showing that she had engaged in statutorily protected activity, she cannot establish a causal link between her protected activity and any alleged adverse employment action. To do so, she would have to show that the person or persons who decided to take the allegedly retaliatory actions against plaintiff were aware of her protected activity. *See Bass*, 256 F.3d at 1119 ("To establish a causal connection, a plaintiff must show that the decisionmakers were aware of the protected conduct, and that the protected activity and the adverse action were not wholly unrelated"). Because plaintiff admittedly never complained of discrimination prior to her resignation, the only possible protected activity that could be causally related to any employment action taken against plaintiff is her lawyer's discussion with unknown employees of defendant. *See Johnson v. Booker T. Washington Broad. Serv., Inc.*, 234 F.3d 501, 507 (11th Cir. 2000)(finding that no causal connection existed because protected expressions occurred after plaintiff's employment was terminated). Those employees are unknown, making it impossible for this court to ascertain whether they were the decisionmakers behind the alleged retaliatory actions. Plaintiff therefore cannot establish the causal connection necessary for her prima facie case of retaliation. *See Bass*, 256 F.3d at 1119 ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead, the plaintiff must show that the person taking the adverse action was aware of the protected expression."). Consequently,

27

Defendant's Motion for Summary Judgment is due to be granted with respect to plaintiff's retaliation claim.

## IV.  CONCLUSION

Based on the forgoing, the court finds that defendant's Motion for Summary Judgment is due to be granted.  An Order in accordance with this Memorandum Opinion will be entered contemporaneously herewith.

**DONE**, this the 23rd day of March, 2009.

SHARON  LOVELACE  BLACKBURN
CHIEF UNITED STATES DISTRICT JUDGE